UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2020 OCT 20 PM 3: 14

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| REILLY LANPHEAR, | ) |
| Plaintiff, | ) Civil Action No. 2:20-cv-167 |
| v. | ) |
| TEXAS ROADHOUSE HOLDINGS LLC, FORMERLY KNOWN AS TEXAS ROADHOUSE OF VERMONT, LLC, d/b/a TEXAS ROADHOUSE, | ) |
| Defendant. | ) |

### PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff, Reilly Lanphear, by and through her attorneys of record, Maley and Maley, PLLC, and hereby alleges and states as follows:

### The Parties

1. Plaintiff Reilly Lanphear (hereinafter referred to as "Plaintiff"), is a resident of Waterbury, Vermont.

2. Plaintiff will turn 21 years old on October 22, 2020.

3. Defendant Texas Roadhouse Holdings LLC is a foreign limited liability company with a principal place of business in Louisville, Kentucky, and doing business in Vermont.

4. At the time of the incident giving rise to the allegations in this Complaint, August 25, 2013, Texas Roadhouse of Vermont, LLC, a Vermont limited liability company was doing business in Vermont and designed, owned, managed, operated, inspected,

1

maintained, and otherwise controlled a Texas Roadhouse restaurant located in Williston, Vermont.

5. On March 28, 2017, Texas Roadhouse of Vermont, LLC merged with Defendant Texas Roadhouse Holdings LLC, a Kentucky company.

6. The name of the surviving company after the merger is Texas Roadhouse Holdings LLC.

7. As a result of the merger and according to Exhibit "A" Plan of Merger to the Articles of Merger, all liabilities of Texas Roadhouse of Vermont, LLC expressly became the liabilities of Texas Roadhouse LLC.

8. At all relevant times, Texas Roadhouse of Vermont, LLC and Texas Roadhouse Holdings LLC were doing business as Texas Roadhouse.

9. For all allegations in this Complaint, the allegations against "Defendant" shall include allegations against Texas Roadhouse Holdings LLC, and its corporate predecessor, Texas Roadhouse of Vermont, LLC, and their agents, employees and representatives.

10. Defendant owns, manages, designs, operates, inspects and otherwise controls restaurants throughout the country.

11. Defendant owned, managed, designed, operated, maintained, and otherwise controlled a Texas Roadhouse restaurant in Williston, Vermont.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(1) as the matter involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the amount of $75,000.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred in this district.

## Factual Allegations

14. Defendant Texas Roadhouse LLC is a growing restaurant company operating in the casual dining segment.

15. The company operates over 610 restaurants in 49 states and 10 foreign countries, including 581 Texas Roadhouse restaurants.

16. Defendant claims to be famous for its hand-cut steaks, fall-off-the bone ribs, made from scratch sides, ice cold beer and irresistible fresh baked bread.

17. Part of its trademark is that it is always focused on "providing Legendary Food and Legendary Service®."

18. A Texas Roadhouse restaurant at all relevant times was located at 225 Interstate Corporate Center, Williston, Vermont.

19. Defendant owned, managed, designed, operated, maintained, and otherwise controlled the Williston Texas Roadhouse, including the fixtures and layout of the facility.

20. As of August 25, 2013, at that Williston Texas Roadhouse, Defendant had set up a meat cooler in a waiting area that was designed by the agents, employees and representatives of Defendant to be an area which agents, employees and representatives knew would be crowded with guests waiting for either takeout orders or to be seated in the restaurant.

21. Defendant positioned the meat cooler so that agents, employees and representatives of the restaurant would ask guests whether they wanted a steak and so that guests could view their steaks before they were seated, and if they wanted, pick out the steak to eat.

22. Defendant designed and intended the meat cooler as a showcase which guests would be encouraged by staff at the restaurant to move toward.

23. At that Williston restaurant as of August 25, 2013, agents, employees and representatives of Defendant should have known that the waiting area that the cooler was in would be an area which would be crowded with guests, including children, waiting for either takeout orders or to be seated in the restaurant.

24. Defendant determined the location of the meat cooler.

25. Defendant designed the meat cooler.

26. Defendant owned the meat cooler.

27. Defendant operated the meat cooler.

28. Defendant inspected the meat cooler.

29. Defendant controlled the meat cooler.

30. Defendant maintained the meat cooler.

31. At all relevant times, the meat cooler had a vent on it with exposed sharp metal edges.

32. At all relevant times, the metal vent had metal parts which were bent.

33. The metal parts were bent, jagged and dirty.

34. Below is a photograph of the vent to the meat cooler as it existed in the Williston Texas Roadhouse on August 25, 2013.



35. Below is another photograph of the vent to the meat cooler as it existed on August 25, 2013:



36. The sharp metal parts of the vent were not covered by a register or vent cover.

37. The sharp metal parts of the vent could have been covered by a register or vent cover.

38. Defendant's agents, employees and representatives knew that sharp metal parts of the meat cooler were unprotected.

39. On August 25, 2013, 13 year-old Reilly Lanphear, Plaintiff, visited the Williston Texas Roadhouse with her mother, Stephanie Lanphear, to pick up a "To-Go" order of food.

40. Plaintiff stood near the hostess stand in the waiting area with her mother.

41. While her mother was paying for their food, a Texas Roadhouse waitress, agent and employee of Defendant, requested that Plaintiff move backward and out of her way so that the waitress could reach a basket of rolls which were on top of the meat cooler.

42. The waitress directed Plaintiff toward the exposed metal on the vent.

43. When Plaintiff moved backward as requested by the waitress, the exposed, sharp, jagged metal on the meat cooler cut her heel.

44. After leaving the restaurant, Plaintiff and her mother later noticed profuse bleeding coming from her heel.

45. Plaintiff and her mother were unable to stop the bleeding from the laceration to her heel.

46. Plaintiff's mother took Plaintiff for treatment at the emergency room at Central Vermont Medical Center in the early hours of August 26, 2013.

47. As a result of her injuries, Plaintiff has experienced and continues to experience pain, disability, scarring, fear and mental anguish.

48. As a result of her injuries, Plaintiff has missed out on sports and other daily activities and continues to experience a loss of enjoyment of life.

49. Plaintiff has received and continues to receive medical care and physical therapy for her injuries.

## Cause of Action-*Res Ipsa Loquitur*

50. Plaintiff repeats and re-alleges each and every of the foregoing paragraphs set forth above and incorporates the same by reference as though fully set forth herein.

51. Defendant owed Plaintiff a duty to exercise reasonable care to ensure that Plaintiff was not exposed to unreasonable dangerous conditions in the waiting area of Defendant's restaurant.

52. Defendant, and its agents and employees for whom it is vicariously liable, held control over the meat cooler located in its waiting area at its Williston, Vermont location.

53. Plaintiff had no control over the location or condition of the meat cooler in Defendant's waiting area.

54. Plaintiff took no inappropriate or negligent action that caused or contributed to the injuries she sustained as a result of being cut by the meat cooler in Defendant's waiting area.

55. The meat cooler was the instrument for which Defendant was responsible that was the producing cause of Plaintiff's injury.

56. A child being cut by sharp, exposed metal when brushing against a meat cooler in a waiting area of Defendant's restaurant, as occurred with Plaintiff, can only occur as a result of Defendant, its agents and employees for whom it is vicariously liable, failing to exercise reasonable care.

57. The nature of and manner of the injury suffered by Plaintiff in and of itself is evidence of Defendant's negligence.

58. As a direct and proximate result of Defendant, and its agents and employees' failure to exercise reasonable care under the circumstances as it relates to the condition and location of its meat cooler, Plaintiff suffered injury to her right heel.

59. As a further direct and proximate result of the negligence of Defendant, and its agents and employees, Plaintiff has required hospital and medical care and treatment and will require medical care and treatment in the future.

60. As a further direct and proximate result of the negligence of Defendant as aforesaid, the Plaintiff has suffered great pain, disability, anxiety, mental anguish, loss of enjoyment of life and will suffer great pain, disability, anxiety, mental anguish, and loss of enjoyment of life in the future.

61. As a further direct and proximate result of the negligence of Defendant as aforesaid, Plaintiff is permanently scarred.

62. As a further direct and proximate result of the negligence of Defendant as aforesaid, Plaintiff has incurred and will incur medical bills.

## Cause of Action-Negligence

63. Plaintiff repeats and re-alleges each and every of the foregoing paragraphs set forth above and incorporates the same by reference as though fully set forth herein.

64. At all times herein material, Defendant and its agents and employees for whom it is vicariously liable, had a duty to ensure that its premises be maintained in a safe and suitable condition for use by its guests, including the Plaintiff.

65. Due to the fact that the location of the jagged metal grate was in a room where patrons are asked to wait prior to being seated or picking up food, it was foreseeable that a

8

restaurant patron like Plaintiff could be injured by the exposed metal protruding from the grate.

66. The Plaintiff had a right to assume that the premises at 225 Interstate Corporate Center in Williston, Vermont were reasonably safe for the purposes for which it was to be used and that the proper precautions had been taken by Defendant to make them so.

67. Defendant and its agents and employees for whom it is vicariously liable had a duty to insure that the public areas in which guests like Plaintiff are asked to wait to pick up food be kept reasonably safe.

68. Defendant and its agents and employees for whom it is vicariously liable had a duty to ensure that its guests such as Plaintiff were not unnecessarily or unreasonably exposed to dangerous conditions.

69. Defendant and its agents and employees for whom it is vicariously liable, were negligent by failing to exercise reasonable care in that it knew or should have known that the jagged, sharp, exposed metal from the meat cooler that was positioned in the waiting area was in a defective and dangerous condition as there was no protective covering resulting in exposed, sharp and dangerous metal edges.

70. At said time and place, as a result of the negligence of Defendant and its agents and employees for whom it is vicariously liable, Plaintiff was unnecessarily and unreasonably exposed to danger as she was asked to back up into an open, exposed jagged metal grate.

71. At all times herein material, Defendant breached its duty of care by failing to exercise reasonable care to remedy a dangerous, defective meat cooler that it knew or should have known existed in its waiting area.

72. As a direct and proximate result of the negligence of Defendant and its agents and employees for whom it is vicariously liable, Defendant's agents and employees failed to exercise reasonable care when it requested that Plaintiff back up into the area of exposed jagged metal edges on the meat cooler thereby exposing Plaintiff to an unreasonably dangerous condition.

73. As a direct and proximate result of the negligence of Defendant and its agents and employees for whom it is vicariously liable, Plaintiff has sustained a permanent scarring.

74. As a further direct and proximate result of the negligence of Defendant and its agents and employees for whom it is vicariously liable, Plaintiff has required hospital and medical care and treatment and will require medical care and treatment in the future.

75. As a further direct and proximate result of the negligence of Defendant and its agents and employees for whom it is vicariously liable, Plaintiff has incurred and will incur in the future, medical expenses for medical care and treatment.

76. As a further direct and proximate result of the negligence of Defendant as described in this Complaint, the Plaintiff has suffered pain, disability, anxiety, mental anguish, loss of enjoyment of life and will suffer pain, disability, anxiety, mental anguish, and loss of enjoyment of life in the future.

   WHEREFORE, Plaintiff seeks damages in an amount that is fair, just and adequate as determined by the trier of fact.

**PLAINTIFF MAKES THIS HER DEMAND FOR TRIAL BY JURY.**

Dated at Burlington, Vermont this 20th day of October, 2020.

          BY:    PLAINTIFF REILLY LANPHEAR
                    MALEY AND MALEY, PLLC

                    */s/ Christopher J. Maley*
                    Christopher J. Maley
                    Attorney for Plaintiff
                    30 Main Street, Suite 450
                    P.O. Box 443
                    Burlington, VT 05402
                    (802) 489-5258
                    chris@maleyandmaley.com